J. Henry Neal, Edmund C. Campbell, William F. Kenney, William R. Sampson, William H. Hitchcock, Trustees of the First Peoples Trust, Petitioners, *v*. Commissioner of Internal Revenue, Respondent.

Docket No. 45403.   Promulgated June 29, 1932.

*William H. Hitchcock, Esq.*, for the petitioners.
*Brooks Fullerton, Esq.*, for the respondent.

552

554

OPINION.

VAN FOSSAN: In this case we are confronted with the question whether or not a specific ruling, made by the Commissioner in 1920 and applicable only to the petitioners, of which ruling personal notice was sent to and received by petitioners, was reversed or revoked

by court opinions, general rulings and promulgations, no specific notice of revocation being sent to petitioners until 1927.

Petitioners base their case on the provisions of section 704 (a) of the Revenue Act of 1928, which provides:

If a taxpayer filed a return as a trust for any taxable year prior to the taxable year 1925 such taxpayer shall be taxable as a trust for such year and not as a corporation, if such taxpayer was considered to be taxable as a trust and not as a corporation either (1) under the regulations in force at the time the return was made or at the time of the termination of its existence, or (2) under any ruling of the Commissioner or any duly authorized officer of the Bureau of Internal Revenue applicable to any of such years, and interpretative of any provision of the Revenue Act of 1918, 1921, or 1924, which had not been reversed or revoked prior to the time the return was made, or under any such ruling made after the return was filed which had not been reversed or revoked prior to the time of the termination of the taxpayer's existence.

For the purpose of clarity of understanding we recapitulate the salient facts. The First Peoples Trust was formed in 1919 by a declaration of trust and began business January 1, 1920. On December 2, 1920, the Commissioner, over his personal signature, wrote a letter to petitioners specifically holding the organization to be a trust, taxable as such. Thereafter, until 1928, when an adverse decision by the United States Circuit Court of Appeals was rendered, petitioners filed income-tax returns in accordance with the Commissioner's ruling, i. e., as a trust. On February 9, 1923, the collector advised petitioners that his superiors had ruled that petitioners need not file capital-stock-tax returns.

On May 12, 1924, the United States Supreme Court decided *Hecht* v. *Malley*, 265 U. S. 144, and certain other cases and on June 7, 1924, the Secretary of the Treasury approved a revision of the regulations relating to capital-stock tax, giving effect to the recent decisions and dividing trusts into two classes, i. e., holding trusts and operating trusts, the former being nontaxable and the latter taxable. On August 11, 1924, the Commissioner declared the above interpretation applicable to income-tax situations under the Revenue Acts of 1918 and 1921, and on August 18, 1924, a similar ruling as to the 1924 Act was published.

On October 6, 1924, the Commissioner and the Secretary promulgated Regulations 65, including article 1504, which purported to indicate the distinction between an association and a trust, and on December 5, 1924, the Deputy Commissioner wrote petitioners in reference to their controversy over the classification of petitioners for capital-stock-tax purposes, offering to grant further hearing on

the matter, if desired. Petitioners requested such a hearing and the same was held December 17, 1924. On January 15, 1925, the Acting Deputy Commissioner sent petitioners a letter containing a tabular statement of computation of capital-stock-tax liability and on March 25, 1925, petitioners received notices of assessment of such taxes. The taxes were paid under protest, claim for refund was filed and rejected, and suit was brought for recovery. The District Judge ruled favorably to petitioners' claim, but the Circuit Court of Appeals on October 30, 1928, reversed the District Court and held petitioners to be an association taxable as such for capital-stock-tax purposes.

On August 27, 1927, the collector advised petitioners by letter that the Commissioner " has ruled that the (petitioner) is an association " for income-tax purposes. Attached to the letter was a copy of a letter from the Commissioner to the collector dated August 23, 1927, stating that the " status of the organization in question for the purpose of income tax has been reconsidered　*　*　* " and holding that " the organization is, therefore, held to be an association and not a trust, and is, accordingly subject to tax as a corporation. The former ruling dated December 2, 1920, is, accordingly, hereby revoked."

In considering the question presented we start with the premise that section 704 (a) is a statute of repose, calculated to give taxpayers freedom from reversals of opinion, retroactive in character, as to the proper classification of an organization under the law as interpreted by the administrative rulings. Such a statute, being remedial in character, should be liberally construed in favor of the taxpayer. *E. A. Landreth Co.*, 15 B. T. A. 665.

Looking to the facts of the case, we find that the Commissioner had specifically ruled on petitioners' status in 1920 and had committed himself to a holding that taxpayers were a trust and not an association for income-tax purposes. This ruling remained unrevoked, unless revoked by analogy or indirection, until August 27, 1927, when, after reconsideration, it was specifically revoked. The language of the statute affords relief in any situation where a return was filed as a trust " under any ruling of the Commissioner　*　*　* which had not been reversed or revoked prior to the time the return was made　*　*　*." Admittedly, the return for 1924 was filed under the ruling of 1920, which ruling had not been specifically or directly reversed or revoked prior to such filing. The question thus arises, can a specific ruling be reversed or revoked by indirection? That the Commissioner was of the opinion that a specific revocation was necessary is evident from his action in revoking the same in

1927. The language used was that of the present tense. "The former ruling * * * is * * * hereby revoked."

It would seem to be fundamental that the revocation of a ruling, like the revocation of an offer in the law of contracts, must be equal in scope and manner with the ruling. See *Shuey* v. *United States*, 92 U. S. 73. If the ruling was made and published generally, an effective revocation may be accomplished by employing the same means. If the ruling was specific and directed to one individual, then a revocation must be effectively brought to the attention of the same individual and generally by the same means.

In the instant situation petitioners did not rely on a general published ruling or interpretation; they had a specific ruling personal to their trust. Had the reliance been on such a generalization it would seem to be unquestionable that a reversal or revocation of such generalization might be accomplished by a subsequent generalization. Such was the case in various cases previously before the Board. *Commercial Trust Co.*, 18 B. T. A. 1248. See also *E. A. Landreth Co., supra; Van Cleve Trust Co.*, 18 B. T. A. 486; *Mary L. Dutton et al.*, 18 B. T. A. 1151. Here the question is narrower.

Nor need we concern ourselves with the question whether the Commissioner was correct in his ruling in 1920 that petitioners were taxable as a trust. That was his ruling and it stood unreversed or unrevoked until 1927.

The above conclusion makes unnecessary a consideration of the effect on the general situation of *Hecht* v. *Malley* and the Commissioner's rulings in other cases. Petitioners are relying on the personal ruling of 1920.

Similarly, the capital-stock-tax · controversy is immaterial. It may be observed in this connection, however, that the Commissioner in his revocation letter of 1927 makes no mention of such a controversy and does not suggest that the rulings of his office subsequent to *Hecht* v. *Malley* on the capital stock-tax issue had any bearing on the income-tax question or had worked a reversal or revocation of the ruling of 1920. The whole tenor of the letter suggests that the outstanding ruling of 1920 was alive and in full effect. Moreover, the capital-stock-tax issue was not definitely settled as to petitioners until the notice of assessment of March 25, 1925, which was after the date of filing of petitioners' 1924 income-tax return.

We are of the opinion that petitioners should prevail. Their tax return for 1924 was duly filed as a trust under a specific personal ruling by the Commissioner made in 1920, which stood unreversed and unrevoked at the date of filing. They are entitled to the shelter afforded by section 704 (a) of the Revenue Act of 1928.

*Decision will be entered for the petitioners.*